UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION
CASE NO. 1:24-cv-249

**MAKEDA EVANS**,

    Plaintiff,

vs.

**BOLAY ENTERPRISES, LLC,**

    Defendant.

                            /

_____

## COMPLAINT

Plaintiff MAKEDA EVANS, by and through undersigned counsel, sues Defendant BOLAY ENTERPRISES, LLC, a Delaware Limited Liability Company, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.    Venue is proper in this Court as all actions complained of herein and

1

injuries and damages suffered occurred in the Northern District of Florida.

4.      Plaintiff MAKEDA EVANS is a resident of Alachua County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from Retinitis pigmentosa and Bardet-Biedl syndrome type 1, which is a permanent eye and medical condition that substantially and significantly impairs her vision and limits her ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing her world, and adequately traversing obstacles. As such, she is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.      Because she is blind, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or

other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8.    Defendant is a Delaware Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of over 20 U.S.-based fast-casual restaurants specializing in fresh, customizable, and healthy fast-casual meals, including the restaurant Plaintiff intended to patronize in the near future (and as early as December 2024 and/or early January 2025) which is located at 2905 Southwest 42nd Street, Suite 70, Gainesville,

Florida 32608.

9.    Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

10.    Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.    At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of over 20 U.S.-based restaurants "Bolay Fresh Bold Kitchen". Each "Bolay Fresh Bold Kitchen" restaurant is open to the public. As the owner, operator, and/or controller of these restaurants, Defendant is defined as a place of "public accommodation" within the meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

12.    Because Defendant is a restaurant open to the public, each of Defendant's physical locations is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13.     Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.bolay.com/ (the "Website"). Some functions of the Website include providing the public with information about the location, hours, and contact details of the Defendant's restaurants, as well as presenting various menu options along with their prices. In addition, the Website allows users to explore various restaurant services, including pickup, curbside, delivery, and catering, schedule services by choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient shopping experience, purchase gift cards, learn about the company's history in the dedicated section, explore career opportunities, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form.

14.     The Website also services Defendant's physical locations by providing detailed information about the locations and their working hours, available services, menu options with their prices, special offers, and other information that Defendant is interested in communicating to its customers.

15.     Because the Website allows the public the ability to secure information about the locations of Defendant's physical locations, explore various restaurant services, including pickup, curbside, delivery, and catering, schedule services by

choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient ordering experience, purchase gift cards, learn about the company's history in the dedicated section, explore career opportunities, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical locations, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical locations, as it serves as a crucial point of sale for the restaurants. It allows users to make purchases of Defendant's offerings, which are also available for purchase at, from, and through its physical locations.

16.    Because the public can view and use Defendant's services through the Website, thus the Website acts as a critical point of access for Defendant's services that are also available at Defendant's physical locations, explore various restaurant

services, including pickup, curbside, delivery, and catering, schedule services by choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize most of them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient ordering experience, purchase gift cards, learn about the company's history in the dedicated section, explore career opportunities, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form, the Website is an extension of, and gateway to the physical locations, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical locations.

17. At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with

visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as December 2024 and/or early January 2025), Defendant's restaurant located at 2905 Southwest 42nd Street, Suite 70, Gainesville, Florida 32608, and to search for brick-and-mortar locations that are in closest proximity to Plaintiff, explore various restaurant services, including pickup, curbside, delivery, and catering, schedule the service by choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient shopping experience, purchase gift cards, learn about the company's history in the dedicated section, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early December 2024 and/or early January 2025) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.    The opportunity to find information about the locations, hours and contact details of Defendant's physical locations, explore various restaurant services, including pickup, curbside, delivery, and catering, schedule services by choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize most of them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient ordering experience, purchase gift cards, learn about the company's history in the dedicated section, explore career opportunities, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form, and more are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.    Like many consumers, Plaintiff accesses a number of websites at a time to help plan her restaurant visits and to compare offerings, prices, services, and promotions. Plaintiff may look at several dozen websites to compare features, services, special offers, and prices.

21.    Beginning in October 2024, Plaintiff attempted on a number of

occasions to utilize the Website to browse through the services and online offers to educate herself about the restaurant's services, menu items and their pricing, special offers, brick-and-mortar locations, operating hours, with the intent to place an online order. Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

22.    Specifically, Plaintiff intended to visit the Bolay restaurant. Enjoying the experience of exploring local restaurants and regularly visiting new places with her family and friends, she wanted to find a restaurant offering a healthy menu with the option to customize the dishes to meet anyone`s preferences. On or about October 16, 2024, she used the JAWS screen reader to visit Defendant's website. However, upon accessing the site and trying to order a dish before visiting the restaurant, Plaintiff encountered multiple accessibility issues that made navigation inefficient. When she attempted to add a menu item to the cart, she could not effectively go through the process. The checkboxes for selecting additional options for the chosen dish were not properly associated with categories such as toppings, proteins, or sauces. While some options were required, the error message only specified the category needing selection without properly associating the options with the corresponding category. Furthermore, the focus did not shift to the required category, leaving Plaintiff confused and unable to proceed with the Checkout

process.

23.    Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Heading hierarchy on the home page was not properly defined, and there was missing heading level 1. Legally blind users tend to find specific content based on the logical organization of the page. Heading level 1 can provide important indication of what the page is about and outline its content;

b. Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to;

c. The mobile version of the navigation menu, when collapsed, was still included in the reading order. Specifically, the mobile version of the navigation menu was improperly included in the reading order, even though Plaintiff was using the website's desktop version;

d. Links led to external websites but did not indicate that they were external. As a result, Plaintiff became disoriented when redirected to another website. The link text failed to notify legally blind customers about the significant change in context. Specifically, the "Order Online" link did not indicate that it would redirect to a different domain;

e. Interactive elements had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive elements. For example, the buttons for controlling the carousel region on the homepage were unlabeled and announced simply as "button";

f. The telephone numbers on the website were presented in plain text, making them non-interactive and inaccessible to screen reader software. Specifically, the phone numbers on the restaurant locator page were presented in plain text, preventing Plaintiff from contacting the restaurants directly;

g. Plaintiff encountered repetitive link texts that were announced separately from their context. These links did not provide helpful information and disoriented Plaintiff. Specifically, on the restaurant locator page, there were multiple repetitive links labeled "Locations view details" that did not provide adequate context;

h. Interactive elements that behaved as "buttons" were not programmatically written correctly. Instead of using a "role" attribute, they were built by tags such as <a>. As a result, the screen reader software read the incorrectly constructed element and Plaintiff was confused, because of receiving ambiguous information about the element in focus. For example, on the order page, there were buttons with categories that scrolled the screen to the corresponding category menu items, but they were incorrectly announced as links;

i. The website did not preserve correct keyboard tabbing (reading) order. Plaintiff perceived different version of the web page, and its layout had incorrect sequence and order of interactive elements. Specifically, after selecting a category, the page scrolled to the corresponding section, but the focus did not move to the scrolled content, leaving Plaintiff disoriented and unable to interact effectively with the page;

j. Plaintiff encountered incorrectly marked up lists of categories on the website. They had visual appearance of lists but were incorrectly programmatically formatted and did not announce the number of elements included in them. Thus, Plaintiff was unaware that different links and categories were included in the same page section;

k. Interactive elements were not programmatically associated with their label elements. Specifically, the checkboxes for selecting additional options for the chosen dish were not correctly linked to categories such as toppings, proteins, or sauces;

l. Unclear and ambiguous labels for form fields impeded Plaintiff from correct information input. Plaintiff was unaware of the purpose of the interactive element and could not understand what information was required.

24.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct Plaintiff to a webpage with contact

information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from its home page, that "accessibility" statement, when tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement to enable Plaintiff to equally, quickly, fully, and effectively navigate the Website.

25.    Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

26.    The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same shopping experience, with the same access to the offers and services, as provided at the Website and in the physical locations as the non-visually disabled public.

27.    Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's restaurant located at 2905 Southwest 42nd Street, Suite 70, Gainesville, Florida 32608, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access

barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

28.    Because of the nexus between Defendant's physical locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical locations for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar locations that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical locations, which are places of public accommodation subject to the requirements of the ADA.

29.    On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

30.    On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with

disabilities.

31. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities

34. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

35. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

36. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

37. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the

visually disabled and/or blind communities.

38. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

39. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of using Defendant's services offered on the Website and in the physical locations from their homes.

40. Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the restaurants in contravention of the ADA.

41. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

42. The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

43. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

44.    Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

45.    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

46.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

47.    Notice to Defendant is not required because of Defendant's failure to cure the violations.

48.    Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

49.    Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

50.    Plaintiff re-alleges paragraphs 1 through 49 as if set forth fully herein.

51.    Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

52.    Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to find information about

the locations, hours and contact details of Defendant's physical locations, explore various restaurant services, including pickup, curbside, delivery, and catering, schedule services by choosing a preferred date and time, locate nearby restaurants offering these services using the Website's locator, view menu items and customize them with additional options like vegetables, proteins, toppings, and sauces, sign up for a more convenient shopping experience, purchase gift cards, learn about the company's history in the dedicated section, explore career opportunities, read the blog for updates on company news and stories, access nutrition and allergen guides, find answers to frequently asked questions in the FAQ section, and contact the company directly through an online form. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's restaurants. Further, the Website serves to augment Defendant's physical locations by providing the public information about the restaurants and by educating the public as to Defendant's available services offered through the Website and in, from, and through the physical locations.

53.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

54.    Specifically, under Title III of the ADA, 42 U.S.C.

§12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

55.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

56.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

57.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical locations in violation of 42 U.S.C. §12101, *et seq*, and

as prohibited by 42 U.S.C. §12182, *et seq*.

58.    Further, Plaintiff has engaged an ADA website compliance expert herein, Robert D. Moody, to review Defendant's Website and confirm that the issues that Plaintiff encountered on the Website do, in fact, exist and are, in fact, barriers to accessibility for the visually-impaired. Mr. Moody's Expert Declaration is attached to this Complaint as Exhibit "A."

59.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

60.    Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

61.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, ensuring that all links have distinctive and unambiguous link text, maintaining an adequate focus order throughout the website, and ensuring that interactive elements are properly labeled. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

62.    Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

63.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

64.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

65.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

66.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to

effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

67.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

68.    As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical locations.

69.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

70.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities,

privileges, advantages, and accommodations of the physical locations through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical locations and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical locations.

71.    Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

---

[1]  or similar.

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to

25

send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

DATED: December 28, 2024.

**ALEKSANDRA KRAVETS, ESQ. P.A.**
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By: _____*/s/ Aleksandra Kravets, Esq.*
        Aleksandra Kravets, Esq.
        FBN: 120562